IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: KENNETH J. ASHCRAFT, | : | Chapter 13 |
| DEBORAH D. ASHCRAFT f/k/a | : | |
| DEBORAH D. BLEVINS a/k/a | : | Bankr. No. 20-12725-BLS |
| DEBORAH D. BLEVINS ASHCRAFT, | : | |
| | : | |
| Debtors. | : | |

---

| | | |
|---|---|---|
| CITIGROUP MORTGAGE LOAN TRUST | : | |
| INC. ASSET-BACKED PASS-THROUGH | : | |
| CERTIFICATES, SERIES 2007-AMC2, | : | |
| U.S. BANK NATIONAL ASSOCIATION, | : | |
| AS TRUSTEE, | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 24-600-CFC |
| KENNETH J. ASHCRAFT, DEBORAH D. | : | |
| ASHCRAFT f/k/a DEBORAH D. BLEVINS | : | |
| a/k/a DEBORAH D. BLEVINS ASHCRAFT, | : | |
| | : | |
| Appellees. | : | |

---

Daniel M. Pereira, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, Delaware; Walter J. Buzzetta, STRADLEY RONON STEVENS & YOUNG, LLP, Washington, D.C.; Daire J. Pyle, STERN & EISENBERG, Newark, Delaware,

> *Counsel for Appellant*

Elaina L. Holmes, DOROSHOW, PASQUALE, KRAWITZ, & BHAYA, Wilmington, Delaware,

> *Counsel for Appellees*

## **OPINION**

March 25, 2026
Wilmington, Delaware

_CHIEF JUDGE_

## I.    INTRODUCTION

This appeal arises in the chapter 13 case of Kenneth J. Ashcraft and Deborah D. Ashcraft (the "Debtors"), which the Debtors filed in October 2020 amidst an ongoing dispute with their mortgage lender, Citigroup Mortgage Loan Trust, Inc. Asset-Backed-Pass-Through Certificates, Series 2007-AMC2, U.S. Bank National Association, as Trustee ("Citigroup"). In 2019, Citigroup informed Debtors that it intended to foreclose on their home due to significant accrued and unpaid fees and charges. To prevent the loss of their home, and to afford an opportunity to negotiate with Citigroup, the Debtors filed for relief under chapter 13 of the Bankruptcy Code, which triggered the automatic stay under section 362(a). The parties' dispute continued throughout the chapter 13 proceedings, which are characterized by the Bankruptcy Court as involving "almost exclusively [] disputes between the Debtors and [Citigroup] over whether mortgage payments were overdue and how Citigroup or its servicer was calculating or accounting for the Debtors' obligations." _In re Ashcraft,_ 2024 WL 1986078, at *1 (Bankr. D. Del. May 3, 2024) (the "Opinion"). The dispute ultimately generated the two contested matters from which this appeal arises.

First, the Debtors objected to Citigroup's proof of claim, which asserted that the Debtors owed $45,287 in prepetition mortgage payments and fees. The Debtors'

objection asserted, *inter alia,* that Citigroup had failed to properly credit their payments or explain charges. (Bankr. D.I. 84.)[1] Second, Citigroup filed a motion pursuant to section 362(d) of the Bankruptcy Code, seeking relief from the automatic stay to permit it to exercise its remedies under the mortgage and foreclose upon the Debtors' home, on the basis that the Debtors were significantly behind on their post-petition mortgage payments. (Bankr. D.I. 61.) The Debtors objected. (Bankr. D.I. 65.) The Bankruptcy Court held a two-day trial, beginning on December 19, 2023 and concluding on January 24, 2024, and then took the matter under advisement. On May 3, 2024, the Bankruptcy Court issued its thorough Opinion and accompanying Order (Bankr. D.I. 111) (the "Order") denying Citigroup's motion for stay relief and sustaining in part the Debtors' objection to Citigroup's proof of claim.

On May 17, 2024, Citigroup filed a timely notice of the Order. D.I. 1. The appeal was fully briefed on January 20, 2026.[2] D.I. 34, 35, 36, 37. No party requested oral argument. For the reasons set forth herein, the Order will be affirmed.

---

[1] The docket of the Chapter 13 case, captioned *In re Ashcraft,* No. 20-12725-BLS (Bankr. D. Del.) is cited herein as "Bankr. D.I. __." The transcript of the December 19, 2023 hearing (D.I. 9-6) is cited herein "12/29/23 Tr.__," and the transcript of the January 24, 2024 hearing (D.I. 37) is cited herein as "1/24/24 Tr. __."

[2] The Court held an initial mediation conference on June 24, 2024 (D.I. 10) which was continued to a future date and then rescheduled multiple at the request of the parties from August 2024 through May 2025. *See* D.I. 11-20. On May 27, 2025, this Court issued an order (D.I. 21) (the "Scheduling Order") withdrawing the appeal from mediation and setting a schedule to govern briefing of the merits of the appeal. On August 4, 2025, the Court entered an order approving the parties' joint stipulation (D.I. 27) to extend the deadlines contained in the Scheduling Order (D.1. 28) (the

2

## II.    BACKGROUND

The Opinion sets forth the factual background of this dispute, which is not challenged or otherwise addressed in Citigroup's opening brief. As I write primarily for the parties, only a short summary is necessary here.

### A.    The Property and the Mortgage

The Debtors have lived at their home, located at 653 McGovern Road, Hockessin, Delaware 19707, for more than 19 years. In 2006, the Debtors executed a mortgage and note with Argent Mortgage Company, LLC, in the amount of $212,000.00 plus interest. D.I. 9-4, Ex. C-1 & C-2. Citigroup maintains that, via transfer and assignment, it is the current holder of the note and mortgage. *Id.*, Ex. C-3. Cenlar FSB ("Cenlar") acts as servicer of the mortgage. In their Chapter 13 Plan, the Debtors indicate they are retaining their home. Bankr. D.I. 154.

### B.    Citigroup's Prior Motion

Citigroup filed a prior motion for stay relief, which was ultimately resolved. There, it was undisputed that the Debtors were behind on their post-petition mortgage obligations, but the parties negotiated a lump sum payment to bring the Debtors

---

"Amended Scheduling Order"). On September 17, 2025, Citigroup filed a motion to stay all deadlines in the Amended Scheduling Order (D.I. 29) (the "Motion to Stay") pending the Bankruptcy Court's ruling on the chapter 13 trustee's motion to dismiss the Debtors' chapter 13 case (Bankr. D.I. 104), which I granted. D.I. 31. The chapter 13 trustee's motion to dismiss was later withdrawn. Bankr. D.I. 164. On November 13, 2025, the Court issued an order setting a schedule by which briefing on the merits of the appeal would conclude by January 20, 2026. D.I. 33.

3

current on their mortgage and to resolve the stay relief motion. But as the

Bankruptcy Court explained in the Opinion:

> Pursuant to that agreement, Mrs. Ashcraft prepared and sent in by mail separate checks for each of the months covered by the agreed lump sum payment. Weeks passed, and Mrs. Ashcraft contacted the servicer to confirm receipt of the payments and that she was indeed current on her mortgage. Unfortunately, Mrs. Ashcraft was informed that no payments had been received and therefore she was still in material default on the mortgage to her home. At considerable personal expense, she stopped payment on all of the checks (which she assumed had been lost) and made arrangements for direct and immediate replacement payment via cashier's check to Cenlar, which was negotiated by Cenlar.
>
> The problem continued, however, when Cenlar then attempted to negotiate the collection of checks that Mrs. Ashcraft had stopped payment upon. Those checks bounced (costing the [Debtors] more bank fees) and riddled the mortgage payment history with a collection of notations for payments received and then reversed for insufficient funds. The record reflects it required substantial effort by the Debtors and their lawyer in 2021 to sort this mess out: indeed, it was only at trial in December 2023 that the two sides were able to agree that the [Debtors] were in fact current on their mortgage obligations as of June 2021 by
> virtue of the payment resolving the first stay relief motion.

*In re Ashcraft*, 2024 WL 1986078, at *4-5 (footnotes omitted).

### C.    Citigroup's Second Motion

On August 2, 2022, Citigroup filed the second motion for stay relief, asserting

that the Debtors again had fallen behind in the post-petition mortgage payments, and

therefore "cause" existed under section 362(d) of the Bankruptcy Code to allow it to

4

exercise its remedies, including foreclosure. (*See* Bankr. D.I. 61.) Citigroup offered evidence in the form of a payment history, which was admitted into evidence (D.I. 9-4, Ex. C-4). In the context of Citigroup's stay relief motion, the Bankruptcy Court explained, "it is incumbent upon the Court to sift through the evidence and identify the post-petition arrearage, if any, and thereupon direct payment of that arrearage to provide Citigroup with adequate protection of its interest in the Property." *In re Ashcraft,* 2024 WL 1986078, at *7.

As the Bankruptcy Court found, the payment history reflects the stopped checks from May 2021, and also indicates that the Debtors missed payments in July, November, and December 2021. At trial, Mrs. Ashcraft acknowledged that the July 2021 payment did indeed bounce because she had written the check for that month from the wrong bank account. 12/19/23 Tr. at 128:2-20. It was her testimony that she promptly submitted a replacement check, but that the payment was not reflected in the payment history. *Id.* at 129:7-21. Through hours of testimony, Mrs. Ashcraft walked the Bankruptcy Court through the multiple account statements that she received from Cenlar. Based on the documents and testimony, the Bankruptcy Court found "substantial daylight between Cenlar's policies and standards for managing mortgage accounts, and its actual practices," as its files contained no letters from Debtors and no records of a phone call. *See In re Ashcraft,* 2024 WL 1986078, at *4. "[T]he monthly statements and invoices issued to the [Debtors] regularly failed to

5

account for payments made, contained inaccurate or misleading information as to when—or even whether—payments were due, and identified sizable amounts immediately due (well in excess of the standard monthly mortgage payment) with no explanation and no apparent basis for the amount alleged to be due." *Id.* at *5-6. The Bankruptcy Court found that the monthly statements provided to the Debtors "are at best confusing, and at worst, wrong or unsupported," and the Opinion sets forth several examples. *See id.*

The Bankruptcy Court further credited Mrs. Ashcraft's testimony that on one of her many calls, Cenlar's "representative old her to stop submitting any payments that were less than the full $12,000 amount demanded and that it would otherwise no longer accept her payments." *Id.* at *7 (citing 12/19/23 Tr. at 174:5-17; 175:20-24; 176:1-18). "Typically, a debtor who decides to withhold rent or mortgage payments during a dispute is expected to escrow or segregate those monies for payment when the dispute is resolved." *Id.* at *8. "Here, however, it was [Citigroup] (through its agent) that directed the Debtors to stop making payments. It demanded payment in full of a large and questionable sum, as to which the Debtors had repeatedly requested an explanation and received no response." *Id.*

Based on the trial record, which revealed "a host of payments missed and made, and accounting and billing that is both impenetrable and demonstrably wrong in places," the Bankruptcy Court determined that "the competing testimony and

6

accounting records do not provide a reliable basis for the Court to fix with precision the post-petition amounts due from the [Debtors]." *Id.* at *6. "To the extent the [Debtors] were behind on one or more payments, that problem was compounded by the confusing and unsupported billing statements and a consistent failure to communicate with the customer on basic questions that go to the heart of the servicer's business." *Id.* at *7.

### D.    The Opinion

Lacking any basis in the record to precisely calculate the post-petition amounts due, the Bankruptcy Court denied Citigroup's motion for stay relief and deemed the Debtors current on their post-petition mortgage obligations. *See id.* at *8. As the Opinion explains:

> It would be profoundly inequitable to conclude this trial by finding [Citigroup's] accounting and customer service practices largely caused the problem, but then place the Debtors in immediate, material default on the mortgage by requiring prompt remittance of the withheld mortgage payments. Accordingly, the Court will find and conclude that the Debtors are current under their post-petition mortgage obligations (including but not limited to principal, interest, escrows, fees, and charges) through April 30, 2024. Debtors' next regular monthly payment shall be due for the month of May 2024.

*Id.* at *8. Regarding Citigroup's claim for pre-petition arrearages, the Bankruptcy Court partially sustained the Debtors' objection, reducing Citigroup's claim by

7

$9,839. *Id.* at *9. The Bankruptcy Court added that it would entertain a request by Debtors' counsel for an award of fees and costs. *Id.*

## III.    JURISDICTION AND APPLICABLE STANDARDS

The Court has jurisdiction over appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). The Order, which denied relief from the automatic stay and disallowed a portion of Citigroup's proof of claim, is a final, appealable order. *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 592 (2020) (order denying relief from automatic stay is final and immediately appealable); *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) ("An order allowing or disallowing a claim is a final, appealable order") (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir. BAP 2006)).

In undertaking a review of the issues on appeal, the District Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). "Clear error exists only if a finding is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005). As the finder of fact, the Bankruptcy Court is entitled to deference for its credibility determinations. *See In re Myers,* 491 F.3d 120, 126 (3d Cir. 2007). A trial court's decision to admit or exclude evidence is generally

reviewed for abuse of discretion. *Philadelphia Workforce Dev. Corp. v. KRA Corp.,* 673 F. App'x 183, 189 (3d Cir. 2016). A court abuses its discretion where its decision was "arbitrary, fanciful or clearly unreasonable." *Democratic Nat'l Comm. v. Republican Nat'l Comm.,* 673 F.3d 192, 201 (3d. Cir. 2012).

## IV.    ANALYSIS

### A.    The Bankruptcy Court Properly Denied Citigroup's Motion for Stay Relief

#### 1.    Legal Standard

Section 362(d) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay - -
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if - -
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

Section 362(d)(1) provides that stay relief may be granted for "cause." As the Bankruptcy Court correctly explained, although the Bankruptcy Code does not define "cause," the Third Circuit has held that courts should consider the totality of

9

circumstances in each particular case to determine whether cause for relief from the stay exists. *In re Aleris Int'l, Inc.*, 456 B.R. 35, 37 (Bankr. D. Del. 2011) (citing *Baldino v. Wilson (In re Wilson),* 116 F.3d 87, 90 (3d Cir. 1997) (internal punctuation omitted)). As the Bankruptcy Court further explained, "[t]he party seeking relief from the automatic stay "bears the burden of establishing a *prima facie* case of cause." *Genrette v. Bank of New York Mellon Trust Co., NA (In re Genrette)*, 2019 WL 4740053, *3 (D. Del. Sept. 27, 2019) (quoting *Wilmington Trust Co. v. Aardvark, Inc. (In re Aardvark, Inc.)*, 1997 WL 129346, *4 (D. Del. Mar. 4, 1997)). "A *prima facie* case requires a showing by the movant of 'a factual and legal right to the relief that it seeks.'" *In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006). "To establish cause, the party seeking relief from the stay must show that the 'balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Aleris Int'l*, 456 B.R. at 47 (quoting *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003)). Evidence of a debtor's failure to make post-petition payments also can constitute "cause" for granting relief from the automatic stay. *Genrette*, 2019 WL 4740053, *4 (citing *In re Jones*, 284 B.R. 92 (Bankr. E.D. Pa. 2002), *aff'd*, 308 B.R. 223 (E.D. Pa. 2003)).[3]

---

[3] Alternatively, under § 362(d)(2), a movant may seek relief from the stay if the debtor lacks equity in the property, and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(B). The movant has the burden of proving lack of equity in the property, and the debtor has the burden of proving the feasibility of a reorganization. 11 U.S.C. § 362(g); *see also JER/Jameson*, 461 B.R. at 304. The

## 2.   Citigroup Failed to Carry its Burden to Show Cause

The Bankruptcy Court properly framed the inquiry:

> Accordingly the initial inquiry is whether Citigroup has
> proven that the Debtors have materially failed to make post-
> petition mortgage payments to the extent that, in order to
> adequately protect its interest here, Citigroup must have
> relief from the automatic stay to pursue foreclosure
> remedies against the Property. To the extent that stay relief
> is not granted, the parties have requested that the Court
> determine the amount of any post-petition arrearage under
> the mortgage.

*In re Ashcraft*, 2024 WL 1986078, at *3. It was Citigroup's burden to make a *prima facie* showing of its factual and legal right to the relief that it sought. Citigroup had the opportunity to proffer records showing that the Debtors materially failed to make post-petition mortgage payments and that "cause" therefore existed to lift the automatic stay. Citigroup did not carry its burden. The Opinion reflects that during a two-day trial the Bankruptcy Court admitted scores of documentary evidence and heard the testimony (direct and cross-examination) of Mrs. Ashcraft (for the Debtors), as well as Raymond Crawford, a litigation specialist at Cenlar (for Citigroup). The Opinion is replete with references to trial testimony and admitted

---

Bankruptcy Court found that the Debtors offered unrebutted testimony that they have considerable equity in the Property. 12/19/23 Tr. at 197:4-198:8. Citigroup's proof of claim alleges a secured claim of approximately $258,000; Mrs. Ashcraft testified that the property at issue is worth over $400,000, and this testimony was not seriously challenged at trial. It was also undisputed that the property at issue is the Debtors' home and is thus necessary for an effective reorganization. *See In re Ashcraft*, 2024 WL 1986078, at *3.

11

evidence which reflects the Bankruptcy Court's efforts to determine whether the Debtors were meeting their post-petition payment obligations. After taking the matter under advisement, the Bankruptcy Court drafted a painstakingly detailed Opinion concluding that "the competing testimony and accounting records do not provide a reliable basis for the Court to fix with precision the post-petition amounts due from the [Debtors]." *In re Ashcraft*, 2024 WL 1986078, at *7. It was not possible, therefore, to determine whether or not the Debtors were current on their post-petition obligations.

The record supports the Bankruptcy Court's finding that statements sent to the Debtors were "at best confusing, at worst wrong or unsupported," *id.* at *5, and the Opinion provides several egregious examples. The mortgage statement for October 2021 (prepared by and sent to the Debtors by Cenlar) showed a payment due date of February 2022. *See id.* The following month's statement, for November 2021, reflects a payment due date of March 2022, and the February 2022 statement shows a payment due date of May 2022. *Id.* No explanation was provided to the Debtors at the time, nor to the Bankruptcy Court at trial, for the monthly statements that indicate no payments amounts currently due. *Id.* In May 2022, Mrs. Ashcraft testified that she paid her mortgage twice (for a total of $3,827.14) but her June 2022 statement identified a past due amount of $5,541.64. *See id.* As the Bankruptcy Court explained, Cenlar's payment history provides no support for the $5,541.14 figure, and

12

no evidence was offered at trial to establish its accuracy. *See id.* "Just a month later, in July 2022, the Debtors received a statement showing a past due amount of $ 10,683.70." *Id.* at *6. The Debtors were "unable to understand how the figure had nearly doubled in a month," and "no clarification or explanation of the facially confusing accounting was provided to her at the time or offered at trial." *Id.* The Bankruptcy Court admitted into evidence many letters written by the Debtors to Cenlar, and found Mrs. Ashcraft testified credibly to repeated phone calls throughout this time period. *See id.* at *6-7. The Bankruptcy Court credited Ms. Ashcraft's testimony, which "revealed a constant and unsuccessful effort by the Debtors to obtain guidance or an explanation for the seemingly random large amounts that appeared on her mortgage statement." *Id.* at *4.

While Citigroup argues that the Bankruptcy Court erred in denying its stay relief motion (D.I. 34 at 11-16), it does not challenge any of the above findings in support of the Bankruptcy Court's conclusion that Citigroup failed to show the Debtors were in material default of post-petition mortgage payments and that denial of the stay relief motion was appropriate.

### 3.    Deeming the Debtors Current on the Disputed Months' Obligations Was Not an Abuse of Discretion

Citigroup argues that, "[b]ased on the Bankruptcy Court's findings, denial of the [stay relief motion] would likely have been adequate and appropriate. But the

13

Bankruptcy Court went much further, decreeing that "the Debtors are current under their post-petition mortgage obligations" as of April 30, 2024. D.I. 34 at 11-15. Citigroup complains that, in reaching this conclusion, the Bankruptcy Court improperly "focused" on the alleged telephone call between Mrs. Ashcraft and Cenlar, in which the representative advised her not to submit any payments unless she was submitting the full amount due (approximately $12,000). *See id.* at 11. According to Citigroup, the Bankruptcy Court improperly credited this testimony and relied on it "to excuse the Debtors' failure to escrow monies associated with disputed payments," and in spite of a mortgage provision that any forbearance by the lender does not constitute a waiver of the underlying obligations. *See id.* "[U]nder these terms, any statement by a customer service representative of Cenlar … instructing Debtors to withhold payments until final resolution of a dispute should not be grounds for elimination amounting to forgiveness of otherwise valid mortgage payment obligations." *Id.* at 12. Deeming Debtors current on post-petition payments equated to an elimination or forgiveness of the obligations, Citigroup reasons, which "was an extreme, extraordinary remedy for [Citigroup's] administrative failings." *Id.* at 15. According to Citigroup, the Order constitutes an "excessive remedy," which "the Debtors did not even seek," and "should be reversed as an abuse of discretion." *Id.*

14

I find no abuse of discretion in the Bankruptcy Court's determination to credit Mrs. Ashcraft's testimony as to her conversations with Cenlar. That Mrs. Ashcraft believed she may have withheld owed funds is of little relevance to the ruling that what was owed to Citigroup could not be accurately determined in the first place. Nor was it an abuse of discretion, following days of trial testimony and evidence, to deem the Debtors current on the disputed months' obligations. The Order resolves a contested matter disputed post-petition mortgage payments, in an ongoing Chapter 13 proceeding, payments for which Citigroup's agent was ultimately unable to provide clear support, despite every opportunity to do so at an evidentiary hearing held at its own request. I reject Citibank's suggestion that, following this exhaustive trial, some separate, additional proceeding was required to attempt to determine, yet again, whether the disputed post-petition obligations were paid or unpaid. Citibank suggests none.

**B.    Citigroup Fails to Show that Reduction of its Prepetition Claim Was Based on Clear Error**

### 1.    Legal Standard

As the Bankruptcy Court correctly explained, the burden of proof for a claim filed in a bankruptcy proceeding "rests on different parties at different times." *In re Ashcraft*, 2024 WL 1986078, at *3 (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Initially, the claim holder must establish the *prima facie* validity of the claim. *Id.* (citing *In re Allegheny*, 954 F.2d at 173). Bankruptcy Rule 3001(f)

15

provides that a proof of claim executed and filed in accordance with the rules of procedure (*i.e.*, on that includes the facts and documents necessary to support the claim), constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Samson Res. Corp.*, 569 B.R. 605, 615 (Bankr. D. Del. 2017). The claim objector must then produce evidence that, "if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny*, 954 F.2d at 173-74). At that point, the burden shifts back to the claim holder to prove the validity of the claim by a preponderance of the evidence. *Id*. at 174. The ultimate burden of persuasion rests with Citigroup as the claim holder. *Id.*

### 2. The Bankruptcy Court Properly Sustained, in Part, the Debtors' Objection to Citigroup's Claim

Citigroup filed a timely proof of claim asserting that the Debtors owed $258,625.05 on account of the mortgage and prepetition arrearage totaling $45,287.24. As the Bankruptcy Court explained, Citigroup's claim enjoys *prima facie* validity. The Debtors were therefore required to produce evidence that, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. As the proof of claim alleges multiple missed payments and charges, the Court will address them one by one.

Mrs. Ashcraft testified at trial that she had received a payment history from Citigroup (D.I. 9-4, Ex. C-5) and identified certain payments Debtors claimed to have

16

made but which were not credited to their account, including one payment from April of 2016 and four payments from 2018, totaling $8,444. At trial, the Bankruptcy Court received into evidence numerous exhibits including payment histories, copies of canceled checks, money orders, and similar materials. Mrs. Ashcraft (for the Debtors) and Mr. Crawford (for Cenlar) also testified and were cross-examined. Mrs. Ashcraft reported that it was at times difficult to obtain documentation for certain payments because she occasionally purchased money orders, used MoneyGram, or made wire transfers. *See, e.g.,* 1/24/2024 Tr. at 179, 181, 183, 190, 201, 251.

The Bankruptcy Court determined that it lacked sufficient documentation with respect to the alleged April 2016 payment to sustain the Debtors' claim objection in that amount, but sustained the objection with respect to the four payments made in August and December 2018. The Bankruptcy Court found that "[t]he evidence submitted at trial shows proof of payment by the Debtors for the four monthly installments in 2018 that are missing from [Citigroup's] prepetition payment history." *In re Ashcraft*, 2024 WL 1986078 at *9.

With respect to the first three alleged payments, receipts provided to the Court (D.I. 9-4, Ex. C-6 & C-7) show the following three transactions by the Debtors utilizing a service called CheckFreePay:

- August 15, 2018 (purchase time: 17:45:26), in the amount of $1,697.50; "Biller Name CitiMortgage" (Reference: PA1717-800-5)
- December 16, 2018 (purchase time 13:04:29) in the amount of $1,691.50; "Biller Name CitiMortgage" (Reference: PA1717-922-1)

17

- December 16, 2018 (purchase time 13:06:47) in the amount of $1,691.50; "Biller Name CitiMortgage" (Reference: PA1717-922-2)

The fourth payment is a PNC Bank check dated December 26, 2018 in the amount of $1,727.10. *See* D.I. 9-4, C-8. Additionally, Mrs. Ashcraft testified as to having made each of these payments.

Citigroup argues that Debtors' exhibits alone presented an insufficient legal basis to sustain the claim objection in those amounts. *See* D.I. 34 at 5-11. Citigroup argues that these exhibits "consisted of photocopies of the fronts of the money orders and checks" and "did not include the backs of the instruments" "or proof of negotiation or deposit of the instruments." Citigroup argues that Courts have universally rejected a debtor's purported proofs of payment where there is no evidence that checks resulted in payment. *See id.* at 8. With respect to the money order purchase receipts, Citigroup argues that they are insufficient without accompanying tracking data. Citigroup cites no cases in support of this contention. With respect to the check, Citigroup argues it was presented without the backs of the check or bank statements.

But at that point, the burden shifted reverted back to the claim holder Citigroup to prove the validity of the claim by a preponderance of the evidence. *In re Allegheny*, 954 F.2d at 174. Debtors presented receipts, records, and testimony in support of having made the payments. Citigroup points to nowhere in the record where it provided evidence to dispute their accuracy. Rather, Citigroup (through its

18

servicer) provided inaccurate statements and records it could not explain, even at trial. Citigroup fails to demonstrate that the Bankruptcy Court's determination to admit Debtors' evidence or credit Mrs. Ashcraft's testimony was "arbitrary" or "clearly unreasonable" in light of the unusual facts and circumstances of this proceeding. *Democratic Nat'l Comm.*, 673 F.3d at 201. I will not disturb the Bankruptcy Court's findings with respect to the four 2018 payments.[4]

## V.    CONCLUSION

For the reasons set forth herein, I will affirm the Order. The Court will issue a separate Order consistent with this Opinion.

---

[4] Citigroup's opening brief contains a footnote asserting that the $3,075 in "late fees should be reinstated for the reasons set forth in this appeal brief." D.I. 34 at 7 n.2. The footnote argues only that Bankruptcy Court's determination that it lacked sufficient documentation with respect to the April 2016 payment is inconsistent with its decision to sustain the objection as to the 41 months of late fees. I disagree. The Bankruptcy Court sustained the Debtors' objection to late fees because "the evidence adduced at trial demonstrates that the servicer's failure to clearly respond to the [Debtors'] repeated inquiries contributed materially to the delay in resolving or sorting out the billing discrepancies." *In re Ashcraft,* 2024 WL 1986078, at *9. Citigroup's opening brief offers no other argument with respect to the late fees.